**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| TANYA KVASNIKOFF,<br><br>                     Plaintiff,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>                     Defendant. | **Case No. 3:16-cv-00081-SLG**<br><br>Case No. 3:17-cv-00077-SLG<br>(Consolidated) |

## ORDER RE MOTIONS TO DISMISS AND PETITION FOR CERTIFICATION

Before the Court at Docket 28 and Docket 29 are the Government's Motions to Dismiss the Complaints of Third-Party Plaintiff Bristol Bay Native Association[1] (BBNA) and Plaintiff Tanya Kvasnikoff, respectively.[2] At Docket 21 is BBNA's Motion/Petition for Certification and Dismissal Under the Westfall Act. The motions have been extensively

---

[1] On January 9, 2017, Ms. Kvasnikoff filed a complaint in state court against BBNA, which then filed a third-party complaint against the United States. *See* case no. 3:17-cv-00077-SLG, Docket 1 (State Court Compl.) & Docket 1-2 (State Court Answer and Third-Party Compl.). The Government then removed the state court case to this Court on April 4, 2017. Case no. 3:17-cv-00077-SLG, Docket 1 (Notice of Removal). That case was consolidated into this case on April 18, 2017. Case no. 3:17-cv-00077-SLG, Docket 8 (Order re Consolidation).

[2] BBNA's status in this case has been the subject of some dispute. In the Government's reply to BBNA's opposition to the motion to dismiss, the Government asserted that "BBNA is not a real party in interest in the Complaint filed by Kvasnikoff against the United States and therefore may not file pleadings in opposition." Docket 43 (Gov's Reply) at 2. In response, BBNA filed a Motion to Strike at Docket 44, asserting that the Government's assertions amounted to an entirely new motion. The Court subsequently denied this motion and considered BBNA's filings in reaching its decision. Docket 54 (Minute Entry).

briefed.³ Oral argument took place on February 13, 2018 in Anchorage, Alaska.⁴ For the following reasons, the Government's Motion to Dismiss Ms. Kvasnikoff's Complaint against the United States at Docket 29 will be denied, BBNA's Motion for Certification and Dismissal at Docket 21 will be granted, and the caption will be amended as set forth above. The Government's Motion to Dismiss BBNA's Complaint at Docket 28 will be denied as moot.

## BACKGROUND

On September 16, 2013, Plaintiff Tanya Kvasnikoff slipped and fell while descending a staircase at the Old Head Start Building (the Building) in Togiak, Alaska.⁵ Ms. Kvasnikoff alleges that her fall was the result of a missing step.⁶ She sustained multiple injuries that have resulted in pain and suffering and loss of income due to her inability to work.⁷

On April 20, 2016, Ms. Kvasnikoff initiated this action against the United States. She alleges that her injury was the result of negligence by BBNA, which owned the Building and operated programs within it. BBNA is a consortium of Alaska Native villages, including the Native Village of Togiak. BBNA contracts with the United States through

---

³ *See* Docket 30 (BBNA's Opp'n to Gov's Mot. To Dismiss Third-Party Compl.); Docket 31 (BBNA's Opp'n to Gov's Mot. to Dismiss Compl.); Docket 35 (Ms. Kvasnikoff's Opp'n to Gov's Mot. to Dismiss Compl.); Docket 43; Docket 46 (Gov's Reply re Gov's Motion to Dismiss Compl.); Docket 50 (Gov's Reply re Gov's Mot. to Dismiss Third-Party Compl.); Docket 52 (BBNA's Opp'n to Gov's Reply at Docket 43); Docket 53 (Ms. Kvasnikoff's Opp'n to Gov's Reply at Docket 43).

⁴ Docket 54.

⁵ Docket 1 (Compl.) at 3, ¶ 11.

⁶ Docket 1 at 3, ¶ 11.

⁷ Docket 1 at 5–6, ¶¶ 18–19.

Case No. 3:16-cv-00081-SLG, *Kvasnikoff v. United States*
Order re Motions to Dismiss and Petition for Certification
Page 2 of 14

the Bureau of Indian Affairs (BIA) pursuant to the Indian Self-Determination and Education Assistance Act (ISDEAA). Ms. Kvasnikoff is a tribal member of the Native Village of Togiak.[8]

Ms. Kvasnikoff alleges that on the day of her injury, she had been using the fax machine in the Building to submit paperwork during regular business hours.[9] At the time Ms. Kvasnikoff was on the premises, the Building was used by BBNA for an array of purposes, including as an office, tribal gathering hall, and a place where members of the Togiak Tribe and community could use the facilities for community events.[10] The Building was also used for a variety of programs and services, and tribal members could use the Building to perform tasks such as faxing, printing, and using the internet as part of a workforce development program.[11] These services were largely funded by the United States, pursuant to its Multi-Year Funding Agreement (FA) with BBNA.[12] The FA bound BBNA and the United States pursuant to a Compact of Self-Governance (Compact) to which the two parties agreed in 1995.[13]

---

[8] Docket 1 at 3, ¶ 10.

[9] Docket 35 at 3; *see* Docket 1 at 3, ¶ 9. Although the building is referred to as the Old Head Start Building, the Head Start Program was no longer being formally conducted there at the time of Ms. Kvasnikoff's incident. *See* Docket 30-2 (Blue Dep.) at 7.

[10] Docket 21-1 (Anderson July 17, 2017 Affidavit) at 3; *see* Docket 30-2 at 11.

[11] Docket 21-1 at 3; *see* Docket 30-2 at 11.

[12] Docket 21-1 at 3; *see* Docket 29-2 (FA). The Multi-Year Funding Agreement is referred to by various parties as both the AFA and FA. For purposes of this order, AFA and FA are the same document. The Court will refer to the agreement as the FA.

[13] Docket 29-1 (Compact). Article III, Section 3 of the Compact states: "The Signatory agrees to provide the programs, activities, functions, and services that are identified in the Annual Funding Agreement." Docket 29-1 at 20. The Compact also provides that the Annual Funding Agreement will establish the total amount of funding available for the execution of the programs. Docket 29-1 at 20. The Funding Agreement in effect at the time of Ms. Kvasnikoff's injury was the Multi-Year

Case No. 3:16-cv-00081-SLG, *Kvasnikoff v. United States*
Order re Motions to Dismiss and Petition for Certification
Page 3 of 14

Maintenance of the Building was managed by James Ingram, who was an employee of BBNA.[14] Mr. Ingram was paid exclusively by BBNA's administrative cost pool, which was primarily funded by the United States through the FA.[15]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a court case if the court lacks subject matter jurisdiction. Federal courts are courts of limited jurisdiction. "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."[16] Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of an action for failure to state a claim for which relief can be granted. A district court applies the "facial plausibility" pleading standard as analyzed by the Supreme Court in *Ashcroft v. Iqbal*.[17] Under that standard, to survive a Rule 12(b)(6) motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[18] "In support of a motion to dismiss under Rule 12(b)(1), the moving party may submit 'affidavits or any other evidence

---

Agreement for Fiscal Years 2012-2014, which by its own terms was effective from Oct. 1, 2011 until September 30, 2014. Docket 29 at 3; Docket 29-2. All subsequent references to the FA are to this document.

[14] Docket 21-1 at 4; Docket 30-3 (Ingram Dep.) at 4.

[15] Docket 21-1 at 4.

[16] Stock West, Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted).

[17] 556 U.S. 662 (2009).

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In its motion to dismiss BBNA's third-party complaint, the Government cites to both Rule 12(b)(1) and Rule 12(b)(6). Docket 28 at 3. The Government's motion to dismiss Ms. Kvasnikoff's complaint identifies neither rule, but asserts lack of subject matter jurisdiction as the sole basis for dismissal. Docket 29 at 9.

Case No. 3:16-cv-00081-SLG, *Kvasnikoff v. United States*
Order re Motions to Dismiss and Petition for Certification
Page 4 of 14

properly before the court. . . . It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.'"[19]

The Federal Tort Claims Act provides for a limited waiver of sovereign immunity by granting federal district courts jurisdiction over "civil actions on claims against the United States . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."[20] Under the Indian Self-Determination and Education Assistance Act (ISDEAA), "Congress provided that Indian tribes, tribal organizations, Indian contractors, and their employees, may be deemed employees of the BIA for purposes of the FTCA when they are carrying out functions authorized in or under a self-determination contract."[21]

"When a federal employee is sued for a wrongful or negligent act, the [Westfall Act] empowers the Attorney General to certify that the employee 'was acting within the scope

---

[19] *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (alterations in original) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).

[20] 28 U.S.C. § 1346(b)(1).

[21] *Colbert v. United States*, 785 F.3d 1384, 1390 (11th Cir. 2015) (citing 25 U.S.C. § 5321 note (Civil Action Against Tribe, Tribal Organization, etc., Deemed Action Against United States) ("[A]n Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior or the Indian Health Service in the Department of Health and Human Services while carrying out any such contract or agreement and its employees are deemed employees of the Bureau or Service while acting within the scope of their employment in carrying out the contract or agreement . . . . [A]fter September 30, 1990, any civil action or proceeding involving such claims brought hereafter against any tribe, tribal organization, Indian contractor or tribal employee covered by this provision shall be deemed to be an action against the United States and will be defended by the Attorney General and be afforded the full protection and coverage of the Federal Tort Claims Act.")).

Case No. 3:16-cv-00081-SLG, *Kvasnikoff v. United States*
Order re Motions to Dismiss and Petition for Certification
Page 5 of 14

of his office or employment at the time of the incident out of which the claim arose[.]'"²² "Upon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee. The litigation is thereafter governed by the [FTCA.]"²³ The Act provides that "[i]n the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment."²⁴

**DISCUSSION**

Pursuant to the Westfall Act, BBNA seeks certification and dismissal from the case. Ms. Kvasnikoff agrees that this Court should grant BBNA's petition for certification and dismiss BBNA.²⁵ The Government opposes BBNA's motion, but nevertheless seeks to dismiss BBNA on the basis that this Court does not have jurisdiction over either BBNA's third-party complaint or, consequently, its petition for certification.²⁶

---

²² *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 419–20 (1995) (quotation and citation omitted).

²³ *Osborn v. Haley*, 549 U.S. 225, 230 (2007).

²⁴ 28 U.S.C. § 2679(d)(3).

²⁵ *See* Docket 35 at 2 n.1 ("Ms. Kvasnikoff joins in BBNA's Petition for Certification, Doc. 21[.]").

²⁶ Docket 28 at 4 n.1 ("Because the court lacks jurisdiction over BBNA's third-party action against the United States, it lacks jurisdiction to rule upon BBNA's petition."). In its motion to dismiss BBNA's third-party complaint, the Government contends that this Court does not have jurisdiction because due to "the derivative nature of the jurisdiction conferred on the district court by Section 1442, the federal court may not exercise jurisdiction over the removed action unless the state court initially had subject matter jurisdiction." Docket 28 at 3. The Government asserts that the state court did not have proper jurisdiction over the third-party complaint, because it was based on the FTCA, which "is a limited waiver of immunity and requires all such actions be brought in federal court." Docket 28 at 4 (citing 28 U.S.C. § 1346(b)(1)). However, the Government originally removed the entire action pursuant to 28 U.S.C. § 1442(a)(1). *See* case no. 3:17-cv-00077-SLG, Docket 1. And as Ms. Kvasnikoff notes, 28 U.S.C. § 2679(d)(3) provides that "[i]n the event the [Westfall] petition is filed in a . . . proceeding pending in a State court, the action or proceeding

Case No. 3:16-cv-00081-SLG, *Kvasnikoff v. United States*
Order re Motions to Dismiss and Petition for Certification
Page 6 of 14

The Government also seeks dismissal of Ms. Kvasnikoff's Complaint, in which Ms. Kvasnikoff alleges that because the United States, through the Bureau of Indian Affairs, contracted with BBNA to provide services for the local Tribal population, her claim against BBNA is covered by the FTCA.[27] The Government contends that this Court does not have jurisdiction over Ms. Kvasnikoff's Complaint against the United States because BBNA's alleged tortious conduct was not within the scope of the FA or the Compact and thus she cannot maintain a claim against the United States under the FTCA.

1. The Compact and FA Provide for FTCA Coverage

Pursuant to the ISDEAA, BBNA and the United States agreed to the Compact of Self-Governance in 1995.[28] The Compact effects the transfer of control over numerous federal programs to BBNA, allowing BBNA discretion over programs traditionally provided by the BIA.[29] With regard to tort liability, the Compact provides that

> The signatory [BBNA] shall be fully covered by such liability insurance or equivalent coverage that the Secretary provides or obtains pursuant to Section 102(c) of P.L. 93-638 [the ISDEAA], as amended. Specifically, the signatory and its employee shall be fully covered by all liability covered under the FTCA to the same extent as the P.L. 93-638 contractors.[30]

---

may be removed without bond by the Attorney General to the district court of the United States for the district and division embracing the place in which it is pending." *See* Docket 53 at 7. That is precisely what occurred here.

[27] Docket 35 at 11. BBNA agrees that the FTCA covers Ms. Kvasnikoff's claim. Docket 21 at 17, 22.

[28] Docket 29-1.

[29] Docket 29-1 at 5.

[30] Docket 29-1 at 24.

Case No. 3:16-cv-00081-SLG, *Kvasnikoff v. United States*
Order re Motions to Dismiss and Petition for Certification
Page 7 of 14

Pursuant to the Compact, BBNA and the United States also agreed to the aforementioned FA, which provides for "the assumption of responsibility by the BBNA for the various programs, services, functions and activities as specified in this document."[31]

Section 22 of the FA states that

> For purposes of Federal Tort Claims Act coverage, BBNA, its participating Tribes and employees (including individuals performing personal service contracts with the BBNA and its participating Tribes) are deemed to be employees of the Federal government while performing work under this AFA. This status is not changed by the source of the funds used by the BBNA and its participating Tribes to pay the employee's salary and benefits unless the employee receives additional compensation for performing covered services from anyone other than the BBNA and its participating Tribes.[32]

Thus, the language of both the Compact and the FA demonstrate an intent to broadly extend FTCA coverage to employees of BBNA.

2. Activity is Encompassed by the Compact

The Government nevertheless asserts that pursuant to *Shirk v. United States*, there is no FTCA coverage for claims arising out of maintenance of the Building. *Shirk* established a two-part test for determining whether a particular claim falls within the scope of Section 314 of the ISDEAA, which generally provides that that tribal organizations and their employees are covered by the FTCA.[33] Under *Shirk*, the first step is to determine whether the alleged activity that gave rise to the claim is encompassed within the relevant

---

[31] Docket 29-2 at 2.

[32] Docket 29-2 at 7–8.

[33] *See supra* note 21.

Case No. 3:16-cv-00081-SLG, *Kvasnikoff v. United States*
Order re Motions to Dismiss and Petition for Certification
Page 8 of 14

agreement.³⁴ The second step is to determine whether the action falls within the scope of the alleged tortfeasor's employment.³⁵

With regard to the first step, the Government asserts that "general building or grounds maintenance" is not listed as a covered program under the FA.³⁶ Accordingly, the Government maintains that "the act or omission giving rise to Plaintiff's 'claim'—the failure of tribal employee to repair tribal property resulting in the injury to a tribal member—is, therefore, not a claim that resulted from the performance of, or a failure to perform, a function under the compact."³⁷ While the Government is correct in the sense that maintenance is not explicitly listed under the FA, it seems self-evident that such maintenance is a key component of the agreement between BBNA and the BIA. Section 2 of the FA, which identifies BBNA Budget Categories, includes Workforce Development, Administration, and Community Services.³⁸ Carrying out such programs presumably requires a number of functions that do not, in and of themselves, execute the primary goal of the programs—for example, purchasing supplies, creating a schedule to avoid conflict

---

³⁴ *Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1006 (9th Cir. 2014).

³⁵ *Id.* In *Shirk*, plaintiffs alleged that two tribal police officers were negligent in approaching an intoxicated driver at an intersection, causing the driver to run a red light and collide with plaintiff motorcyclist, injuring him. *Id.* at 1001. The tribal officers were in the employ of the Gila River Indian Community (GRIC), which had entered into a compact with the United States pursuant to the ISDEAA. Plaintiffs argued that because law enforcement was an element of a subsequent funding agreement reached between GRIC and the United States pursuant to the compact, the officers were subject to FTCA coverage for their negligent conduct. *Id.* at 1002–03. The Ninth Circuit reversed the district court's dismissal in favor of the United States, instructing that the two-part test be applied on remand. *Id.* at 1008–09.

³⁶ Docket 29 at 8.

³⁷ Docket 29 at 8–9.

³⁸ Docket 29-2 at 2.

Case No. 3:16-cv-00081-SLG, *Kvasnikoff v. United States*
Order re Motions to Dismiss and Petition for Certification
Page 9 of 14

over available rooms or workspaces, or ensuring that proper electricity, heating, and water are available in the building. However, without such activities, the programs themselves would be virtually impossible to carry out. The same can be said of building maintenance, which on a basic level is fundamental to the execution of any brick and mortar program. Furthermore, the barebones nature of the FA—which lists only broad categories of programs—suggests that it is not intended to serve as the complete exhaustive list of all activities that fall within its scope.[39]

---

[39] The FA's Budget Categories are broad in scope. The following is an excerpt of the FA's Budget Categories:

    B. Workforce Development
        1. Job Placement and Training
        2. Welfare Assistance
        3. P.L. 102-477 programs (DOL & DHHS funds)
        4. Higher Education Scholarships
        5. Adult Basic Education
        6. Food Bank (tribal design)

. . .

    E. Social Services
        1. Social Services
        2. Indian Child Welfare
        3. Childcare and Early Childhood Education (tribal design)
    F. Community Services
        1. Tribal Government Services
            a. Aid to Tribal Government (technical assistance to tribal governments)
            b. Consolidated Tribal Services (tribal design) (includes flow-through of consolidated program funds and Small & Needy Tribes funds to participating tribes for a variety of locally designed community services)
        2. Economic Development (tribal design)

Docket 29-2 at 2–3. The broad nature of these categories indicates that they do not provide detailed descriptions of all positions or activities needed to carry out the programs.

Case No. 3:16-cv-00081-SLG, *Kvasnikoff v. United States*
Order re Motions to Dismiss and Petition for Certification
Page 10 of 14

President and CEO of BBNA, Ralph Anderson, specifically refuted the notion that general building maintenance is not encompassed by the agreement. Mr. Anderson stated in an affidavit:

> The cost of building maintenance is a well understood element of 'indirect cost' or administrative overhead under federal costs principals, OMBS 'Super-Circular' at 2 C.F.R. Section 200.414 includes Building maintenance costs. [IDEAA's] indirect cost make up most of the contract support costs BBNA receives from our compact. Building maintenance and [the building maintenance supervisor's] position is fully funded from BBNA's administrative costs pool, which is primarily funded from contract support we receive from the compact and the multi-year funding agreement with the United States government.[40]

Furthermore, James Ingram, who performed and managed building maintenance on behalf of BBNA for the Building—which all parties acknowledge is owned by BBNA—was paid with FA funds.[41] And as described above, BBNA's employees are deemed to be covered by the FTCA, pursuant to both the FA and 25 CFR § 1000.275.[42] Thus, the maintenance activity at issue was within the scope of the FA and the Compact.

---

[40] Docket 31-1 (Anderson Dec. 8, 2017 Affidavit) at 2.

[41] Docket 21-1 at 4.

[42] *See* Docket 29-2 at 7. 25 CFR § 1000.275 contains the following:

Is it necessary for a self-governance AFA to include any clauses about FTCA coverage?

No, clauses about FTCA coverage are optional. At the request of Tribes/Consortia, self-governance AFA's shall include the following clause to clarify the scope of FTCA coverage:

For purposes of Federal Tort Claims Act coverage, the Tribe/Consortium and its employees (including individuals performing personal services contracts with the tribe/consortium) are deemed to be employees of the Federal government while performing work under this AFA. This status is not changed by the source of the funds used by the Tribe/Consortium to pay the employee's salary and benefits unless the employee receives additional compensation for performing covered services from anyone other than the Tribe/Consortium.

Case No. 3:16-cv-00081-SLG, *Kvasnikoff v. United States*
Order re Motions to Dismiss and Petition for Certification
Page 11 of 14

The Government also attempts to avoid FTCA coverage by asserting that Ms. Kvasnikoff was not on the premises for purposes of a program that is listed on the FA. The Government asserts that "neither the TANF [Temporary Aid for Needy Families] nor Head Start programs are listed as covered programs [under the FA]."[43] However, Ms. Kvasnikoff's injury stemmed from her use of the Building for a different purpose—one that is clearly within the scope of the FA. Ms. Kvasnikoff claims she was utilizing the Building in order to "submit some paperwork through the BBNA fax facility."[44] As attested to by Mr. Anderson, such activity was within the scope of the FA:

> At the time of the plaintiff's injury, one of the programs that BBNA compacted was Workforce Development. Under this program and at the time of the plaintiff's injury, Togiak Tribal Members freely used the building for completing papers for work or for assistance, faxing, using phones, checking something on-line, printing, and also in training and education. At that time of the plaintiff's injury and as alleged in the complaint, my understanding is that she was in the building to complete and fax such papers.[45]

Ms. Kvasnikoff asserts that "Alaska Native beneficiaries must be able to safely obtain services offered under the [FA], including workforce development, assistance and education."[46] Indeed, it seems clear that implied within BBNA's permission for tribal members to utilize the premises for FA purposes is the right to safe access of those premises. Accordingly, maintenance of BBNA's property is encompassed by the relevant agreements.

---

[43] Docket 29 at 8.

[44] Docket 35 at 3.

[45] Docket 21-1 at 3.

[46] Docket 35 at 16.

Case No. 3:16-cv-00081-SLG, *Kvasnikoff v. United States*
Order re Motions to Dismiss and Petition for Certification
Page 12 of 14

3. Employee's Activity was Within the Scope of Employment

With regard to the second *Shirk* step, the Government asserts that because "performing general building and grounds maintenance of tribally-owned property is [not] a program, service, function, or activity encompassed in BBNA's compact . . . any maintenance responsibilities are outside the scope of any functions performed under BBNA's compact with the BIA."[47] However, the Court rejects the Government's assertion that maintenance is outside the scope of the FA. Therefore, the question becomes whether the alleged tortious activity is within the scope of employment. As alleged by Ms. Kvasnikoff, the negligent failure to repair a missing step is, on its face, encompassed within the scope of general building maintenance. Furthermore, James Ingram attested to the fact that a repair of that nature was within the scope of his duties as a BBNA employee.[48] Therefore, the second step of *Shirk* is satisfied. Accordingly, this Court has jurisdiction over Ms. Kvasnikoff's claim under the FTCA.

**CONCLUSION**

In light of the foregoing, BBNA's Petition for Certification at Docket 21 is GRANTED and BBNA is dismissed as a party. Pursuant to 28 U.S.C. § 2679(d)(3), the United States is substituted as the sole Defendant. The Government's Motion to Dismiss Ms. Kvasnikoff's Complaint at Docket 29 is DENIED. The Government's Motion to Dismiss BBNA's motion at Docket 28 is DENIED as moot. The caption is amended as set forth

---

[47] Docket 29 at 9.

[48] Docket 30-3 at 3.

Case No. 3:16-cv-00081-SLG, *Kvasnikoff v. United States*
Order re Motions to Dismiss and Petition for Certification
Page 13 of 14

above. The Government shall file its answer to Ms. Kvasnikoff's Complaint within 14 days of the date of this order.[49]

DATED this 13th day of March, 2018.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[49] Fed R. Civ. P. 12(a)(4)(A).

Case No. 3:16-cv-00081-SLG, *Kvasnikoff v. United States*
Order re Motions to Dismiss and Petition for Certification
Page 14 of 14